UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
BELINDA P.,

       Plaintiff,   <u>DECISION AND ORDER</u>
             1:24-CV-03174-GRJ

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

 In August of 2020, Plaintiff Belinda P.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Mark Levine, Esq., and the New York County Lawyers Association, Anthe Maria Bova, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 24).

 This case was referred to the undersigned on March 18, 2025. Presently pending is Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

No. 18). For the following reasons, Plaintiff's motion is due to be granted,

and this matter is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on August 26, 2020, alleging disability

beginning December 1, 2019. (T at 11).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").

A hearing was held on April 11, 2023, before ALJ Mark Solomon. (T

at 305-335). Plaintiff appeared with an attorney and testified. (T at 311-29).

The ALJ also received testimony from Fran Plaisted, a vocational expert. (T

at 330-33).

### B.    ALJ's Decision

On June 1, 2023, the ALJ issued a decision denying the application

for benefits. (T at 8-28).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 1, 2019 (the alleged onset date)

and met the insured status requirements of the Social Security Act through

December 31, 2024 (the date last insured). (T at 13).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 8.

The ALJ concluded that Plaintiff's lumbar degenerative disc disease, major depressive disorder, generalized anxiety disorder, and insomnia were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 404.1567 (c), with the following limitations: she can sit for six hours and stand/walk for six hours during an eight-hour workday; lift/carry fifty pounds occasionally and twenty-five pounds frequently; frequently climb, balance, stoop, kneel, crouch, and crawl; remember, understand, and carry out simple instructions; use judgment to make simple work related decisions; adapt to routine and occasional changes in the workplace; and have occasional contact with supervisors, coworkers, and the general public. (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work as an account clerk. (T at 21).

However, considering Plaintiff's age (59 on the alleged onset date, an individual of advanced age, then changing age category to closely

approaching retirement age), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between December 1, 2019 (the alleged onset date) and June 1, 2023 (the date of the ALJ's decision). (T at 22). On March 6, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on April 24, 2024. (Docket No. 1). On November 19, 2024, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 18, 19). The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings, on January 15, 2025. (Docket No. 21). On January 29, 2025, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 22).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence concerning her mental impairments was flawed, which undermines the RFC determination.

Second, she challenges the ALJ's consideration of her subjective complaints.  The Court will address each argument in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

Martin Oviasogie, a psychiatric nurse practitioner, completed a psychiatric assessment in September of 2022. He had been treating Plaintiff weekly for psychotherapy and monthly for medication management

9

since May of 2020.  (T at 1041).  He diagnosed generalized anxiety disorder, major depressive disorder, and insomnia. (T at 1041).

Mr. Oviasogie reported that Plaintiff had marked impairment in her activities of daily living; social functioning; and ability to concentrate, persist, or maintain pace. (T at 1042, 1044-45).  He described Plaintiff as "not in a stable mental state to work in a full or part-time work setting." (T at 1043).

The ALJ found Mr. Oviasogie's opinion unpersuasive, concluding that his assessment of marked impairment in Plaintiff's mental functioning was "inconsistent with the overall treating source mental health record …." (T at 21).

The Court finds that the ALJ's conclusion cannot be sustained and must be revisited on remand. Here's why.

First, the ALJ does not appear to have given any consideration to the fact that Mr. Oviasogie had a treating relationship with Plaintiff that spanned more than 2 years.  This was error.

The Second Circuit has long recognized the particular importance of treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more

important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec*., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also* A*costa Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec*., No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be

considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Second, the ALJ erred by failing to consider and account for the significant consistency between Mr. Oviasogie's opinion and the assessments of both consultative psychiatric examiners.

Dr. Arlene Broska performed a consultative psychiatric evaluation in January of 2021.  She diagnosed generalized anxiety disorder and rule out post-traumatic stress disorder. (T at 733).  Dr. Broska opined that Plaintiff had, *inter alia*, marked limitation with respect to social interaction; moderate impairment in sustaining concentration and performing at pace; marked limitation in sustaining an ordinary routine and regular attendance; and marked impairment in regulating emotions, controlling behavior, and

maintaining well-being. (T at 732-33).  Dr. Broska reported that the results of her examination "appear to be consistent with psychiatric problems, which may significantly interfere with [Plaintiff's] ability to function on a daily basis." (T at 733).

Dr. Michelle Sanders performed a consultative psychiatric evaluation in July of 2021.  She diagnosed generalized anxiety disorder, provisional posttraumatic stress disorder, provisions panic disorder, and unspecific depressive disorder. (T at 1493).  Dr. Sanders assessed moderate to marked limitation in Plaintiff's ability to sustain concentration, perform at pace, and sustain an ordinary routine and regular attendance at work. (T at 1493).  Dr. Sanders believed the results of her examination "appear[ed] to be consistent with psychiatric problems, which may significantly interfere with [Plaintiff's] ability to function on a daily basis." (T at 1493).

The ALJ found Mr. Oviasogie's opinion inconsistent with the record without considering that the opinion was substantially consistent with both consultative examiners' opinions.  In addition, the ALJ considered each consultative examiner's assessment in isolation, taking no apparent account of the significance of their consistency with each other. (T at 19-20).  This was error requiring remand. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14,

2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec*., No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, in deciding to discount the assessments of three mental health professionals who either treated or examined Plaintiff, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during relatively brief, relatively infrequent (weekly or monthly) encounters with her treatment team, most of which were apparently conducted via telehealth and thus did not even require Plaintiff to leave her home. (T at 315, 1041).

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R.

Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ.

6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting

that ALJs must recognize that "the effects of a mental health issue may be

different in a work setting than in a non-work setting"); *Flynn v. Comm'r of*

*Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to

discount opinion based on treatment notes indicating claimant was "well-

groomed and with calm affect" was "an assessment ... beyond the scope of

the ALJ's authority").

The primary question, therefore, is the extent to which Plaintiff's

symptoms would be expected to be exacerbated if she was exposed to the

demands of competitive, remunerative work on a consistent basis. The

judgment of her long-time treating therapist, shared by both consultative

psychiatric examiners, was that Plaintiff would decompensate and

experience marked impairment with key duties, including maintaining

attendance on a consistent basis. (732-33, 1042, 1044-45, 1493).

The ALJ's decision to discount these assessments based primarily on

the mental status examinations does not reflect the proper application of

the medical opinion standard. *See Stacey v. Comm'r of SSA*, 799 F. Appx.

7, 11 (2d Cir. 2020)("It would be improper to rely on these mental status

evaluations to conclude that Stacey is capable of prolonged concentration

while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Moreover, while Plaintiff was generally described as "stable" and denying "acute" psychosocial complaints or distress, she was consistently diagnosed with anxiety, insomnia, and depression and had documented anxious distress, interpersonal problems, paranoia, and persistent insomnia. (T at 1498, 1503, 1505, 1506-07, 1510, 1513, 1515, 1516, 1519, 1522, 1525, 1528, 1531, 1532, 1533, 1535, 1536, 1538, 1539, 1541, 1542, 1543, 1544, 1546, 1547, 1548, 1549, 1551, 1554, 1557, 1558, 1559, 1562, 1564, 1565, 1568, 1576, 1579, 1581, 1582, 1584, 1586, 1596, 1608, 1611). *See Stacey v*, 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

For these reasons a remand is required for proper consideration of the medical opinion evidence consistent with applicable law.

B.    *Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a

medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other

factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: She is frequently confused and relies on her daughter for support. (T at 315-16, 318-19). She experiences depression and anxiety daily. (T at 320-21). She has significant interpersonal problems. (T at 321-22). Panic attacks lasting approximately 15 minutes occur without obvious triggers. (T at 323). She has difficulty coping with changes to her routine and stress. (T at 324). Memory issues impact her activities of daily living. (T at 324-25).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 16).

Plaintiff's subjective complaints will necessarily need to be reconsidered on remand.  The ALJ discounted the complaints as inconsistent with the record. (T at 16).  Notably, however, Plaintiff's complaints are largely consistent with the assessments of her long-time treating therapist and both consultative psychiatric examiners, as set forth above.  A remand, therefore, is required.

### C.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).

Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons outlined above, the Court concludes that a remand is necessary for proper consideration of the medical opinion evidence and Plaintiff's subjective complaints.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the

Pleadings (Docket No. 18) is GRANTED, and this matter is REMANDED

for further administrative proceedings consistent with this Decision and

Order. The Clerk is directed to enter final judgment and then close the file.


Dated: April 1, 2025                          *s / Gary R. Jones*

                                              GARY R. JONES
                                              United States Magistrate Judge